UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LISIA CHAMBERS, | : | Case No. 1:14-cv-263 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| CITY OF CINCINNATI, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Doc. 11)**

This civil action is before the Court on Defendant's motion for summary judgment

(Doc. 11) and the parties' responsive memoranda (Docs. 13, 16).

## I.  BACKGROUND FACTS

Plaintiff is an African-American female employee of  the City of Cincinnati who

has worked for the City in the Income Tax Department for over 20 years.  In 2012,

Plaintiff applied for an internal promotion for a Supervisor Accountant (a/k/a Deputy Tax

Commissioner), but was denied.  The City promoted a white male, Eric Ringshauer, to

the position.  Plaintiff's complaint alleges that the City of Cincinnati violated Title VII of

the Civil Rights Act of 1965 and Ohio Revised Code Section 4112.02.  Plaintiff claims

that the City did not promote her to Supervising Accountant in August 2012 due to race

discrimination and in retaliation for filing a discrimination complaint against the City and

a former supervisor in 2000.

The City of Cincinnati claims that its actions were for legitimate and non-discriminatory reasons and within the City's legitimate business judgment.

## II.    UNDISPUTED FACTS[1]

1.    Plaintiff has been employed by the City of Cincinnati since September 1990. (Doc. 10, Ex. 1 at 66, Ex. 6).

2.    Plaintiff was hired as an Income Tax Examiner/Accountant through the exceptional appointment process, which involves no examination.  (Doc. 10, Ex. 1 at 58, 66; Ex. 6).

3.    Plaintiff worked as a Tax Examiner, which is the equivalent of an Accountant, performing primarily audits for approximately ten years, from 1990 to 2001. (Doc. 10, Ex. 1 at 41).

4.    On June 15, 2000, Plaintiff filed a lawsuit in the Court of Common Pleas, Hamilton County, Ohio.  She filed no other complaints involving discrimination until after she failed to receive the promotion to Supervising Accountant in 2012. (Doc. 10, Ex. 1 at 21-22, 24, Ex. 2).

5.    The 2000 lawsuit was brought against the City of Cincinnati and individually against her supervisor Dan Hamburg.  (Doc. 10, Ex. 1 at Ex. 2).

6.    Ted Nussman is not named in the lawsuit filed in 2000.  (Doc. 10, Ex. 1 at Ex. 2).

7.    In February 2001,  Plaintiff was promoted to Senior Accountant.  (Doc. 10, Ex. 1 at 6 and Ex. 4).

8.    Plaintiff was assigned to the Document Management Section because there was an opening at the time.  (Doc. 10, Ex. 2 at 40).

9.    In her capacity as supervisor of the Document Management Section, Plaintiff primarily supervised clerks and not other accountants.  (Doc. 10, Ex. 1 at 30, 75).

10.    Plaintiff stayed in Document Management until September 2011, when she moved to handling the Collections Section.  (Doc. 10, Ex. 1 at 41).

---

[1]  *See* Doc. 11-1 and Doc. 14.

11. Neither Teresa Gilligan nor Ted Nussman ever used any racial names or comments with Plaintiff.  (Doc. 10, Ex. 1 at 77-78).

12. In June 2012, the Income Tax Department posted a promotional opportunity for a Supervising Accountant due to the vacancy created by the retirement of Joe Roberdeau.  (Doc. 10, Ex. 1 at Ex. 3; Doc. 10, Ex. 2 at 13, 26).

13. Commissioner Teresa Gilligan sent an email with the posting to Plaintiff and encouraged her to apply.  (Doc. 10, Ex. 1 at 25, 32, 121, Ex. 25; Doc. 10, Ex. 2 at 27-28).

14. Plaintiff does not know of Gilligan having any racial bias against her.  (Doc. 10, Ex. 1 at 32).

15. Plaintiff was not responsible for what qualifications were required or preferred for the job.  (Doc. 10, Ex. 1 at 27-28).

16. The only two individuals to apply for the promotion were Plaintiff and another Senior Accountant, Eric Ringshauser.  (Doc. 10, Ex. 1 at 25, 122).

17. Eric Ringshauser met the posted qualifications for the position of Supervising Accountant.  (Doc. 10, Ex. 1 at 27-28).

18. Plaintiff failed to put any experience at the City prior to 2001 on her resume when submitting her application materials for promotion to Supervising Accountant. (Doc. 10, Ex. 1 at 40-42, Ex. 3).

19. Utilizing an interview rather than an examination was the proper procedure under the Civil Service Rules as there were not "more than 3 employees interested and eligible."  (Doc. 10, Ex. 1 at 68-70, Ex. 3).

20. Both applicants for Supervising Accountant were interviewed by the Tax Commissioner, Teresa Gilligan, and the Deputy Tax Commissioner, Ted Nussman.  (Doc. 10, Ex. 2 at 28; Doc. 10, Ex. 1 at 78, 137).

21. Prior to becoming Tax Commissioner, Teresa Gilligan had no experience in Income Tax.  (Doc. 10, Ex. 2 at 12).

22. The last two Finance Directors who supervised the Tax Commissioner and Income Tax Division have been African-Americans.  (Doc. 10, Ex. 2 at 17).

23. Gilligan spoke with Plaintiff regarding why Ringshauser was selected.  (Doc. 10, Ex. 2 at 35-36; Doc. 10, Ex. 1 at 32).

24. Ringshauser, as supervisor of the Audit Section, handled highly technical tax questions, and he also handled the highly complex IRS certification/safeguard review process.  (Doc. 10, Ex. 2 at 35-36).

## III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

## IV.    ANALYSIS

### A.    Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of…race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In a

Title VII case, a plaintiff bears the ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against her. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Unlawful discrimination does not have to be the only reason for an adverse employment action to violate Title VII, but rather must be an essential component of an employer's mixed motive. A plaintiff may carry the burden by (1) introducing direct evidence which shows that in treating a plaintiff adversely, the defendant was motivated by discriminatory intent, or by (2) introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

Plaintiff fails to present direct evidence that supports an inference of discrimination. Where a plaintiff has presented only circumstantial evidence, as Plaintiff has done in this case, the burden shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) applies. Under this framework, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Johnson v. United States Dep't of Health & Human Servs.*, 30 F.3d 45, 47-48 (6th Cir. 1994). To prove a *prima facie* case of race discrimination, Plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subject to an adverse employment decision; (3) that she was qualified for the position; and (4) that she was replaced by a person outside the protected class or that similarly situated non-protected employees were treated more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). After establishing a *prima facie* case, the burden shifts to the defendant to articulate a

legitimate, non-discriminatory reason for its actions.  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994).  If the defendant meets this burden, the plaintiff must then show that defendant's articulated reason is false pretext for discrimination.  *Id.* at 1083 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

It is undisputed that Plaintiff's claims satisfy the threshold *prima facie* case of race discrimination because Plaintiff is a member of a protected class, she was qualified for the position, she suffered an adverse employment action by not being promoted, and a similarly situated individual outside of Plaintiff's class was promoted over her. Accordingly, the Court focuses on the burden shifting analysis.

### 1.    *Legitimate non-discriminatory reason*

"Selecting a more qualified candidate constitutes a legitimate, non-discriminatory reason" for denying a promotion.  *Howkins v. Memphis Light Gas & Water*, 520 F. App'x 316, 319 (6th Cir. 2013).  The City promoted Mr. Ringshauser, a white male, for the Supervising Accountant position because he had more experience dealing with technical accounting issues and more experience managing other accountants.  Since the City produced a legitimate non-discriminatory reason for choosing Ringshuser, the burden of proof shifts back to Plaintiff to show that the nondiscriminatory reason is pretextual and that the true motivation for the decision was discriminatory.

### 2.   *Pretext*

Plaintiff may establish that a proffered reason is a mere pretext by showing that: (1) the stated reason had no basis in fact; (2) the stated reason was not the action reason; or (3) the stated reason was insufficient to explain defendant's action.  *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998).  The pretext inquiry evaluates whether the legitimate business reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  To make this showing, "the plaintiff must … put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

### a.   **Selection of Ringshauser**

Plaintiff maintains that she was more qualified for the Supervising Accountant position than Ringshauser.  The relative qualifications of candidates can establish triable issues of fact as to pretext only where the evidence shows that either: (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) the plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains "other probative evidence of discrimination."  *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 668 (6th Cir. 2013).  The record does not evidence that Plaintiff was a "plainly superior candidate" nor even "as qualified" as Mr. Ringshauser.  *Id.*

7

Gilligan told Plaintiff that Ringshauser "was doing more technical work that was more – more useful in preparing him for the duties of the supervising accountant role and that she did not have the same level of experience." (Doc. 10, Ex. 2 at 35). Ringshauser, as supervisor of the Audit Section, was the go-to person for answering highly technical questions, and he also handled the highly complex IRS certification/safeguard review process. (*Id.* at 35-36). Ringshauser also had more exposure to the UTAX computer system from his work supervising accountants doing complex tax work and understood the details of how the data was manipulated and used, while Plaintiff did not. (*Id.* at 38-39). Although Plaintiff had spent time in Audit in the 1990s, she was not in a supervisory role and her experience predated the introduction of the UTAX system in 2001. (*Id.* at 37, 40).

In addition to qualifications, Plaintiff argues that since she placed first on the 2000 Civil Service Examination for the Income Tax Division, she was more qualified for the position than Mr. Ringshauser, who placed eighteenth on the city-wide 2003 Civil Service Examination (although he placed second among those from Income Tax). However, Gilligan did not consider past Civil Service Examination results from 2000 and 2003 when evaluating candidates for the Supervising Accountant position. (Doc. 10, Ex. 2 at 49-51). Pursuant to the City's official application posting for the Supervising Accountant position, "[i]f more than 3 employees are interested and eligible, Civil Service Commission rules requires an examination process be followed." Mr. Ringshauser and Plaintiff were the only City employees both interested and minimally

eligible for the Supervising Accountant position. Since only two candidates applied for the position, the City did not administer a Civil Service Examination or consider past examinations. *See, e.g., Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) ("Evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.").[2]

Moreover, "a plaintiff's subjective view of her qualifications in relation to other applicants, without more, cannot sustain a claim of discrimination." *Johnson*, 30 F.3d at 47-48. Courts "must look to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). "[I]t is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Legett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000).

Accordingly, Plaintiff has failed to offer evidence that she was "a plainly superior candidate" or that she was "as qualified or more qualified" than Mr. Ringshauser and that there was additional probative evidence of discrimination. Therefore, Plaintiff cannot show that Defendant's articulated reason is false pretext for discrimination.

---

[2] Moreover, these exam results are irrelevant because: (1) Gilligan considered what tasks the applicants were completing at the time and would not have known what material was covered on the old examinations (Doc. 10, Ex. 2 at 40-42, 49-51); and (2) the 2000 test was specific to Income Tax, while the 2003 test was a City-wide test and likely covered different material (*Id.* at 50-51).

### b.    Pattern of Discrimination and Retaliation

Plaintiff can also establish pretext by alleging a custom or pattern of discrimination or retaliation involving other employees and promotions in the Income Tax Division.

Plaintiff seeks to admit "me too" evidence in an effort to allege a custom or pattern of discrimination.  "The Sixth Circuit has held that 'me too' evidence, which is defined as claims by a plaintiff's co-workers that they too were discriminated against, is unwelcome because it is at best only slightly relevant and is always highly prejudicial to the defendant."  *Schrand v. Fed. Pac. Elec. Co*., 851 F.2d 152, 156 (6th Cir. 1988).

To determine if "me too" evidence in logically connected to Plaintiff's claim, courts must consider: (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations."  *Schrack v. R&L Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014).

Plaintiff submits the declarations of Tammy Fleming and Lezonia Crawford, clerks in the Income Tax Division.  Crawford claims that there is a pattern and practice of

race discrimination in the Division. (Crawford Aff. at ¶¶ 1, 3).[3] Specifically, she alleges that an African-American (Troye Shirley) was passed over for a position in favor of a Caucasian (Steve Abbott) in 2008 and that Ted Nussman was involved. (*Id.* at ¶ 3).[4] She cites no personal knowledge and provides no details to support her conclusory allegation. In fact, as Plaintiff acknowledged at her deposition, the issue actually occurred in 2007, when both a Caucasian, Mark Taylor, and an African-American, Troye Shirley, complained to the Civil Service Commission about the promotion of Steve Abbott to a Senior Accountant position. (Doc. 10, Ex. 1 at 63-67, 106-108; Ex. 18).[5] Crawford also discussed a 1997 issue regarding "Bring Your Daughter to Work Day." (Crawford Aff. at ¶ 6). Crawford claims that both she and Plaintiff were denied the opportunity to participate in the event and that management required that they be closed in a small room with their daughters and were ordered not to come out. (*Id.*) Finally, Crawford makes various statements about the merits of the decision to choose Eric Ringshauser over Plaintiff for the Supervising Accountant position. (*Id.* at ¶ 7). Crawford states that Plaintiff had better working knowledge of the parts of the Income Tax Division and more technical experience than Ringshuser. (*Id.* at ¶¶ 7, 8).

---

[3] Crawford is a Clerk Typist III whose main duties are to open and research the return mail. (Doc. 16 at 3).

[4] Mr. Nussman was the Supervising Accountant at the time Mr. Ringshauser was promoted to the position. Both Mr. Nussman (now the Deputy Tax Commissioner) and Ms. Gilligan (the Tax Commissioner) interviewed Plaintiff for the Supervising Accountant position.

[5] The record shows that while Shirley and Taylor both protested Abbott's appointment in 2007, it was to the Civil Service Commission, whose minutes do not mention discrimination. (Doc. 10, Ex. 1 at Ex. 18). There is nothing indicating Nussman was contacted about an EEOC complaint. (Doc. 15, Ex. 1 at 92-95).

Ms. Crawford's personal opinions are irrelevant – rather, the relevant inquiry is whether the employer made a reasonably informed and considered decision based on the particularized facts that were before it at the time the decision was made. Crawford's statements go beyond her personal knowledge and constitute inappropriate conclusions of fact. *See* Fed. R. Civ. P. 56(e) (affidavits used for summary judgment purposes must be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify). Moreover, comments that are vague, not overtly discriminatory in nature, and not made by decision-makers do not constitute direct evidence of discrimination. *Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007).

Ms. Fleming alleges that at some point she complained to Gerald Ware at the EEOC about a coworker and does not believe Nussman took it seriously because of her race. (Fleming Aff. at ¶¶ 3, 4). She also claims that "[i]n the Income Tax Division, there is a 'good ole boys' Caucasian network." (*Id.* at ¶ 5). Fleming alleges that the "Caucasian network" is comprised of Ted Nussman, Eric Ringshauser, and Stephen Abbott who drink together, play golf together, live near each other, and are very friendly with each other outside of work. (*Id.*) However, Fleming fails to support these allegations with facts. In fact, Nussman testified that he does not live near Abbott, has never played golf with him, and his one connection outside work is that his son just started playing on a baseball team that Abbott manages. (Doc. 15, Ex. 1 at 21-23). As for Ringshauser, Nussman played golf with him once, but does not live near him. (*Id.* at 21-23). Flemming also alludes to a situation where she believes Nussman was involved

12

in the selection of Eunice Bell, a white female, instead of her for a Clerk III position. (Flemming Aff. at ¶ 8). However, Fleming does not explain when this situation occurred or how it is related to the promotion about which Plaintiff complains. Accordingly, this "me too" evidence is insufficient to establish pretext.

In her affidavit, Plaintiff claims that she "believe[s] Ted Nussman is a racist." (Chambers Aff. at ¶ 4). However, she fails to present any direct evidence, nor any racist comments - she simply states that Nussman treated former African-American employee John Hand differently based on race. (*Id.*) Plaintiff also criticizes the interview process, because Nussman sat in on the interview, and, in her opinion, "[o]nly the Tax Commissioner [Gilligan] should have been present." (*Id.* at ¶ 2). However, Plaintiff fails to evidence how it was improper to have another person in the same job participating in the interview. Tax Commissioner Gilligan testified that this practice had been done in the past because Nussman had more experience working with the candidates. (Doc. 10, Ex. 2 at 31-32).

Finally, Plaintiff implies that her placement in the position supervising Collections and Ringshauser supervising Audit was discriminatory and contributed to her failure to get the promotion. However, as Gilligan testified, she made the decision to put Plaintiff in Document Management in 2001 because that was where there was an opening at the time. (Doc. 10, Ex. 2 at 40). As Nussman was not a Supervising Accountant at the time, he could not have been involved. Additionally, when Plaintiff went to Gilligan in 2011 about career advancement opportunities, Gilligan transferred her to Collections. (*Id.* at

13

124).  Moreover, Plaintiff never previously alleged that she requested to be transferred to Audit nor that Gilligan or Nussman ever denied such a request.

Accordingly, Plaintiff fails to evidence that Defendant's articulated non-discriminatory reason is false pretext for discrimination.

### B.    Retaliation

Next, Plaintiff claims that the City of Cincinnati retaliated against her for filing discrimination claims against it in the past.  To prove a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity under Title VII; (2) that the City knew of her protected conduct; (3) that the City took an adverse employment action against her after her protected conduct; and (4) that there was a causal connection between the exercise of Plaintiff's protected right and the adverse employment action taken by the City.  *Garner v. Cuyahoga Cnty. Juvenile Court*, 544 F.3d 624, 639 (6th Cir. 2009).  Defendant concedes that Plaintiff can establish the first and third prongs of her *prima facie* case.  However, Defendant argues that Plaintiff cannot establish the second and fourth prongs.

#### 1.    *Knowledge of the protected activity*

With respect to the second prong of the *prima facie* case, the only protected activity that Plaintiff engaged in prior to her failure to get the promotion is the lawsuit she filed in 2000.  (Doc. 10, Ex. 1 at 20-22).  While the City knew about the lawsuit and defended it, it is not enough to merely establish that someone at the City was aware of the protected activity.  Plaintiff must be able to establish that the individuals charged with

14

taking the adverse employment action knew of the protected activity. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999).

In this case, Teresa Gilligan, the Tax Commissioner, made the decision to award the promotion to Ringshauser. Gilligan became Tax Commissioner after the events that resulted in Plaintiff's lawsuit in 2000. Gilligan claims that she "knew there had been problems in the division, but I didn't know the details of who filed what or what happened." (Doc. 10, Ex. 2 at 32). Gilligan was not involved in the settlement of Plaintiff's case, had not seen the settlement agreement, and was not contacted about the claim. (*Id.* at 32-35). However, while the City claims that Gilligan made the promotion decision, Gilligan allegedly told Plaintiff she was relying on Nussman. (Chambers Aff. at ¶ 2). Furthermore, Plaintiff claims that she was told by Nussman that "[h]e had already chosen Eric Ringshauser for the position and there was no need that she apply." (Doc. 10, Ex. 1 at 137). Under the "cat's paw" theory, "the subordinate, not the nominal decisionmaker, is the driving force behind the employment action." *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008). When the decision-maker relies entirely on the recommendation of the biased subordinate, then the decision-maker becomes a "mere conduit" for the discriminatory animus, and the employer is liable. *Id.*

Plaintiff has presented sufficient facts to create a disputed issue of fact regarding whether Gilligan relied on Nussman when making the decision to promote Ringshauser. Nussman knew about Plaintiff's previous lawsuit against the City. Accordingly, Plaintiff has alleged sufficient facts to satisfy the second prong of the *prima facie* case.

15

###### 2.    *Causal Connection*

With respect to the fourth prong, Plaintiff must establish that there was a causal connection between the exercise of her protected right and the adverse employment action taken by the City.  To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  Relevant factors to consider when determining causation include evidence that the employer treated the plaintiff differently than similarly situated employees, or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.  *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987).  Where some time elapses between when the employer learns of a protected activity and the alleged adverse action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causation. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001).  In this case, 12 years passed from the time Plaintiff filed her lawsuit against the City and when she was denied a promotion.  *See e.g., Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (temporal proximity "does not exist" when a multi-year period exists between protected conduct and adverse action).[6]

---

[6] *See also Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 344 (6th Cir. 2001) (rejecting three-year gap between protected activity and alleged retaliation as creating inference of retaliatory motive).

16

There is no temporal proximity or other evidence of retaliatory conduct. Therefore, Plaintiff has failed to show a causal connection and cannot state a *prima facie* case of retaliation.

### 3.    *Non-discriminatory reason*

Even if Plaintiff could establish a *prima facie* case of retaliation, she fails the burden shifting analysis.

The City has articulated a legitimate nondiscriminatory reason for choosing Ringshauser over Plaintiff for the position of Supervising Accountant. (*See* Section IV.A.1). Therefore, the burden of proof shifts back to Plaintiff to "show that the nondiscriminatory reason is pretextual and the true motivation for the decision was discriminatory." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005).

### 4.    *Pretext*

Plaintiff argues that Ted Nussman made the decision to deny her the Supervisor Accounting position and that Nussman has a practice of discriminating against African Americans. As explained *supra* at Section IV.A.2, this argument fails.

## V.    CONCLUSION

Accordingly, for these reasons, Defendant's motion for summary judgment (Doc. 11) is **GRANTED**. The Clerk shall enter judgment accordingly, and this case shall be **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:  3/2/15                                          *s/ Timothy S. Black*
                                                       Timothy S. Black
                                                       United States District Judge